Steven Sklaver (237612)
Glenn C. Bridgman (298134)
Lear Jiang (338600)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
ljiang@susmangodfrey.com

Seth Ard (*pro hac vice*)
Ryan C. Kirkpatrick (243824)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.:  212-336-8330
Fax:   212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| LSIMC, LLC, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY,<br><br>      Defendant. | Case No. 2:20-cv-11518-SVW-PVC<br><br>Honorable Stephen V. Wilson<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION**<br><br>Hearing: May 9, 2022<br>Time:  1:30 p.m.<br>Place:  Courtroom 10A<br>Judge: Stephen V. Wilson<br><br>Third Amended Compl. filed: 02/09/2022 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 1

II.     SUMMARY OF COMMON EVIDENCE ............................................. 6

     A.      The Class Policies Are Standardized, Form Contracts That All Contain the Single-Factor Interest Rate Language. ............................ 6

     B.      AmGen's EFIE and Interest Rates are Quantified, Documented, and Verifiable Class-wide. ............................................................... 8

     C.      Common Evidence Shows that Redetermined Interest Rates Are Not "Based Only On" AmGen's EFIE. ................................................ 10

     D.      Damages Can Be Measured Class-wide and by Policy. .................... 11

III.    ARGUMENT ..................................................................................... 11

     A.      Class Action Standard ..................................................................... 11

     B.      The Proposed Class Meets Rule 23(a)'s Requirements ..................... 12

          1.      Numerosity ............................................................................ 12

          2.      Commonality .......................................................................... 13

          3.      Typicality .............................................................................. 14

          4.      Adequacy ............................................................................... 15

     C.      The Proposed Class Satisfies Rule 23(b)(3) ..................................... 16

          1.      Common Issues of Fact and Law Predominate. ....................... 16

          2.      Common Questions of Contract Interpretation and Breach Turn on Common Evidence ............................................................. 17

          3.      Damages Can Be Computed By Applying a Common Method to AmGen's Data. ..................................................................... 19

          4.      AmGen's Statute of Limitations Affirmative Defense Does Not Defeat Predominance ............................................................. 21

          5.      Class Adjudication is Superior ............................................... 23

IV.     CONCLUSION ................................................................................. 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014) ...............................................................12

*Am. Alternative Ins. Corp. v. Superior Court*,
    135 Cal. App. 4th 1239 (Cal. Ct. App. 2006) ..........................................18

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ...................................................................................12

*ATLES v. Security Life of Denver Ins. Co.*,
    2021 WL 62339 (D. Colo. Jan. 6, 2021) .......................................3, 16, 17

*In re AXA Equitable Life Ins. Co. COI Litig.*,
    2020 WL 4694172 (S.D.N.Y. Aug. 13, 2020) ................................. *passim*

*Bally v. State Farm Life Ins. Co.*,
    335 F.R.D. 288 (N.D. Cal. 2020) ................................................... *passim*

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ...................................................................12

*Cameron v. E.M. Adams & Co.*,
    547 F.2d 473 (9th Cir. 1976) .....................................................................23

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*,
    270 F.R.D. 521 (N.D. Cal. 2010) ..................................................2, 15, 23

*De Stefan v. Frito-Lay, Inc.*,
    2011 WL 13176229 (C.D. Cal. June 6, 2011) ..........................................24

*Desai v. Farmers Ins. Exchange*,
    47 Cal. App. 4th 1110 (Cal. Ct. App. 1996) ............................................18

*In re Deutsche Bank AG Sec. Litig.*,
    328 F.R.D. 71 (S.D.N.Y. 2018) .................................................................16

*Edwards v. First Am. Corp.*,
    798 F.3d 1172 (9th Cir. 2015)........................................................3, 12, 23

*Ellsworth v. U.S. Bank, N.A.*,
    2014 WL 2734953 (N.D. Cal. June 13, 2014) ..........................................13

*Estakhrian v. Obenstine*,
    320 F.R.D. 63 (C.D. Cal. 2017) ................................................................12

ii

*Fairlie v. Transamerica Life Ins. Co.*,
   2018 WL 3381405 (N.D. Iowa July 11, 2018) ........................................................5

*Feller v. Transamerica Life Ins. Co.*,
   2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ............................................... *passim*

*Fleisher v. Phoenix Life Ins. Co.*,
   2013 WL 12224042 (S.D.N.Y. July 12, 2013) ............................................... *passim*

*Gillis v. Respond Power, LLC*,
   677 Fed. App'x 752 (3d Cir. 2017)..............................................................14, 19

*Hanks v. Lincoln Life & Annuity Co. of New York*,
   330 F.R.D. 374 (S.D.N.Y. 2019) ................................................................ *passim*

*Jaunich v. State Farm Life Ins. Co.*,
   2021 WL 5054461 (D. Minn. Nov. 1, 2021) ........................................................3

*Jensen v. SECORP Indus.*,
   2018 WL 5961287 (C.D. Cal. Aug. 23, 2018).....................................................20

*Kolbe v. BAC Home Loans Servicing, LP*,
   738 F.3d 432 (1st Cir. 2013) ...........................................................................19

*Larson v. John Hancock Life Ins. Co.*,
   2017 WL 4284163 (Cal. Super. Mar. 23, 2017) ....................................3, 17, 19, 23

*Lee v. Allstate Life Ins. Co*,
   361 Ill. App. 3d 970 (Ill. Ct. App. 2005) ...........................................................3

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013)...........................................................................19

*Lincoln Nat'l Life Ins. Co. v. Bezich*,
   33 N.E.3d 1160 (Ind. Ct. App. 2015)..........................................................3, 5, 17

*Loritz v. Exide Techs.*,
   2015 WL 6790247 (C.D. Cal. July 21, 2015) .....................................................19

*Milbeck v. TrueCar, Inc.*,
   2019 WL 2353010 (C.D. Cal. May 24, 2019) ..........................................14, 20, 24

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
   311 F.R.D. 590 (C.D. Cal. 2015) ....................................................................24

*Mudpie, Inc. v. Travelers Casualty Ins. Co. of Am.*,
   15 F.4th 885 (9th Cir. 2021) .............................................................................4

*Negrete v. Allianz Life Ins. Co. of N.A.*,
   287 F.R.D. 590 (C.D. Cal. 2012) ....................................................................17

iii

*Nissel v. Certain Underwriters at Llyod's of London*,
    62 Cal. App. 4th 1103 (Cal. Ct. App. 1998) ......................................................18

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014)..............................................................................14

*Peoples v. Sebring Capital Corp.*,
    2002 WL 406979 (N.D. Ill. Mar. 15, 2002)........................................................19

*Red Barn Motors, Inc. v. NextGear Capital, Inc.*,
    915 F.3d 1098 (7th Cir. 2019).......................................................................1, 19

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010)............................................................................14

*Rosenbaum v. Philadelphia Life Ins. Co.*,
    1994 WL 17118392 (C.D. Cal. Mar. 1, 1994) .....................................................5

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010)..........................................................................19

*Schramm v. JPMorgan Chase Bank, N.A.*,
    2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ....................................................21

*In re Snap Inc. Sec. Litig.*,
    334 F.R.D. 209 (C.D. Cal. 2019) ..................................................................13, 15

*Spegele v. USAA Life Ins. Co.*,
    336 F.R.D. 537 (W.D. Tex. 2020) ..................................................................3, 14

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) .........................................................................15

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016)............................................................................11

*Tyson Foods, Inc. v. Bouaphekeo*,
    577 U.S. 442 (2016)............................................................................................16

*Vogt v. State Farm Ins. Co.*,
    963 F.3d 753 (8th Cir. 2020).....................................................................2, 20, 22

*Vogt v. State Farm Life Ins. Co.*,
    2018 WL 1955425 (W.D. Mo. Apr. 24, 2018) *aff'd*, 963 F.3d 753 (8th Cir. 2020) ..................................................................................................... *passim*

*Whitman v. State Farm Life Ins. Co.*,
    2021 WL 4264271 (W.D. Wash. Sept. 20, 2021) .....................................2, 13, 20, 23

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010)............................................................................19

iv

*Yue v. Conseco Life Ins. Co.*,
   282 F.R.D. 469 (C.D. Cal. 2012) ........................................................................... *passim*

**Rules**

Fed. R. Civ. P. Rule 23 ...............................................................................................12

Fed. R. Civ. P. Rule 23(a) ...............................................................................11, 12, 13

Fed. R. Civ. P. Rule 23(a)(1) ......................................................................................12

Fed. R. Civ. P. Rule 23(a)(2) ......................................................................................13

Fed. R. Civ. P. 23(a)(4) ...............................................................................................15

Fed. R. Civ. P. Rule 23(b) ...........................................................................................11

Fed. R. Civ. P. 23(b)(3) ..................................................................................... *passim*

Indiana Rule of Appellate Procedure 58 .......................................................................3

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

10366544v1/016966

## I.    INTRODUCTION

At the heart of this case is a central common question with a common answer: whether defendant American General Life Insurance Company ("AmGen") breached the plain language of its standardized life insurance contracts by redetermining credited interest rates that were too low.  The policies' relevant provisions contain no material differences.  In each, AmGen promised that "[a]ny redetermination of interest rates will be based ***only*** on expectations of future investment earnings."  At trial, common evidence will show that AmGen did not use "only" its "expectations of future investment earnings" ("EFIE") when it redetermined the interest rates that are credited to Plaintiff's account value.  Instead, AmGen used *additional* factors on top of EFIE in order to decrease the interest rates applied, and thereby under-credited interest to thousands of policyholders.

Plaintiff's claim, which depends on the same controlling contract language contained in all the standardized policies, will be established through common evidence of AmGen's own conduct. Common evidence will prove that AmGen improperly short-changed Plaintiff and members of the proposed Class by keeping redetermined interest rates too low and not redetermining interest rates based only on AmGen's EFIE.  Common questions predominate the adjudication of the parties' competing interpretations of the same form contracts. As the Seventh Circuit explained:

> With such a form contract, almost universally signed without negotiation or modification, there is no reason to think that the interpretation of the provision will vary from one signatory to another, and therefore the issue is one that is capable of a common answer and for which that common question predominates over questions affecting individual class members.

*Red Barn Motors, Inc. v. NextGear Capital, Inc*., 915 F.3d 1098, 1102 (7th Cir. 2019).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION
10366544v1/016966

Courts frequently certify classes alleging breaches of standardized insurance contracts.  In *Vogt v. State Farm Ins. Co.*, 963 F.3d 753, 764–70 (8th Cir. 2020), for instance, the Eighth Circuit affirmed certification of a class alleging that an insurer breached insurance policies which stated that "cost of insurance" ("COI") rates would be "based on" specific factors enumerated in the contract.  Courts within the Ninth Circuit have reached the same conclusion, repeatedly certifying classes alleging that an insurer breached a form insurance policy by setting rates that were not "based on" the factors enumerated in the contract.  *See, e.g.*, *Feller v. Transamerica Life Ins. Co.* ("*Transamerica COI*"), 2017 WL 6496803, at *13 (C.D. Cal. Dec. 11, 2017) (certifying nationwide COI breach-of-contract case because: "Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct.");  *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) ("In this case, all proposed class members were owners of life insurance policies that contained uniform language.").[1]

Numerous courts across the country agree.  *In re AXA Equitable Life Ins. Co. COI Litig.* ("*AXA COI*"), 2020 WL 4694172, at *6 (S.D.N.Y. Aug. 13, 2020) ("Based upon its independent review, the Court concludes that a nationwide Policy-Based Claims Class should be certified under Rule 23(b)(3)."); *Hanks v. Lincoln Life & Annuity Co. of New York* ("*Voya COI*"), 330 F.R.D. 374, 382 (S.D.N.Y. 2019) (certifying nationwide class where "[t]he contract language at issue does not vary by individual class member and is not materially different across the eighteen policies");

---

[1] *See also In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.* ("*Conseco COI*"), 270 F.R.D. 521, 530 (N.D. Cal. 2010) ("[I]nterpretation of the standard written policy language will present a question common to the class"); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 305 (N.D. Cal. 2020) (certifying class involving standardized policies issued in California); *Whitman v. State Farm Life Ins. Co.*, 2021 WL 4264271, at *6 (W.D. Wash. Sept. 20, 2021) (certifying contract class under Washington law, citing the "axiom of contract law" that standardized contracts are "interpreted wherever reasonable as treating alike all those similarly situated, without regard to their" subjective understanding).

2

*Fleisher v. Phoenix Life Ins. Co.* ("*Phoenix COI*"), 2013 WL 12224042, at *3 (S.D.N.Y. July 12, 2013) (certifying class involving standardized policies issued in New York because "the claim of breach of contract is identical for all members of the proposed class"); *ATLES v. Security Life of Denver Ins. Co.*, ("*SLD COI*"), 2021 WL 62339, at *9 (D. Colo. Jan. 6, 2021) (certifying 44-state COI overcharge class) *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537 (W.D. Tex. 2020) ("*USAA COI*") (certifying class for breach of form universal life insurance policy under Texas law); *Larson v. John Hancock Life Ins. Co.* ("*Hancock COI*"), 2017 WL 4284163, at *10 (Cal. Super. Mar. 23, 2017) (certifying nationwide class where policies required COI rates to be based on expectations as to future mortality experience); *Lee v. Allstate Life Ins. Co*, 361 Ill. App. 3d 970, 982 (Ill. Ct. App. 2005) (affirming certification of nationwide class applying Illinois law for life insurance owners subjected to increased COIs); *Lincoln Nat'l Life Ins. Co. v. Bezich* ("*Lincoln COI*"), 33 N.E.3d 1160, 1171 (Ind. Ct. App. 2015) (certifying 30-state class action alleging breach of provisions requiring that rates "will be determined by the Company based upon expectations as to future mortality experience");[2] *Jaunich v. State Farm Life Ins. Co.*, 2021 WL 5054461, at *4 (D. Minn. Nov. 1, 2021) (certifying contract class under Minnesota law with standardized insurance policies at issue).

It's easy to understand why. Like these insurers, AmGen engaged in uniform conduct that breached uniform insurance policies, and the adjudication of Plaintiff's claim turns on common evidence.

***First***, this case alleges that AmGen improperly redetermined its interest rates on class policies, and AmGen has acknowledged its process for reviewing and

---

[2] Pursuant to Indiana Rule of Appellate Procedure 58, the decision in *Lincoln COI* was automatically vacated when the Indiana Supreme Court granted Lincoln's petition to hear the case. The parties subsequently settled and jointly dismissed the Supreme Court appeal.

redetermining its interest rates is "the same for all in class policies." *See* Ex. 1 (Jan. 19, 2022 30(b)(6) Deposition of Grace Harvey) at 27:5–7.

*Second*, AmGen's EFIE are documented, quantified, and objectively verifiable class-wide.  Determining what AmGen's EFIE were turns entirely on common proof regarding AmGen's benchmark earned rates.  *See id.* at 113:10–12 (30(b)(6) witness admitting that ███████████████████████ ███████████████████████████████████████████████████████. AmGen has produced quarterly memoranda that document, for all the policies at issue, the company's EFIE, ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████. *See id.* at 63:18–21 (30(b)(6) witness acknowledging that ████████████ ████████████████████████████████████████████████ Ex. 2 (AmGen's Second Supplemental Responses to Interrogatory Nos. 2–4).  These quarterly memoranda are all common proof that can establish that AmGen failed to redetermine its interest rates based only on its EFIE, as the policies require.

*Third*, adjudication of any competing interpretations of the standardized form contracts at issue is a common issue that presents a classic case for class treatment.  Individualized evidence will play no role, and certainly no predominating role, in contract interpretation because the relevant provisions in the proposed Class's policies are identical and the Court must enforce the plain language of the policies as viewed from the perspective of a reasonable layperson, which is an objective standard.  As the Ninth Circuit recently confirmed: "California courts require that we interpret an insurance policy according to the 'clear and explicit' meaning of the terms as used in their 'ordinary and popular sense.' We must "construe [insurance policies] as would a **reasonable layperson**, not an expert, attorney, or a historian." *Mudpie, Inc. v. Travelers Casualty Ins. Co. of Am.*, 15 F.4th 885, 890 (9th Cir. 2021) (citation omitted and emphasis added).

AmGen's corporate representative has already previewed AmGen's primary liability defense: that it can redetermine interest rates based not "only" on EFIE, as the contract requires, but also based on an undisclosed, oft-shifting profit spread that AmGen deducts from its EFIE.  But this merits defense can be decided class-wide, and has been soundly rejected in cases concerning single-factor COI provisions, which interpret the phrase "based on" to be exclusive, even absent the clearer "based **only** on" language present here.[3]  The validity of either parties' interpretation of AmGen's form contracts presents a common question with a common answer that will be decided class-wide.  *See AXA COI*, 2020 WL 4694172, at *7 ("The class members' contract claims rise and fall together.").

*Fourth*, though not required for class certification, computing damages is a mere programming exercise performed through automated functions that apply class-wide.  Plaintiff's expert, economist Robert Mills, who has reviewed and analyzed charges on over half-a-million universal life insurance policies in his career, can compare the difference between what AmGen's interest rates would have been had

---

[3] *See, e.g., Lincoln COI*, 33 N.E. 3d at 1168 (reversing denial of certification where policy used phrase "based on," because an "ordinary policyholder of average intelligence would read the COI rate provision to say that the COI rate is calculated using the factors enumerated and only those factors"); *Rosenbaum v. Philadelphia Life Ins. Co.*, 1994 WL 17118392, at *3 (C.D. Cal. Mar. 1, 1994) (summary judgment ruling, where, "there is nothing in the Flexible Policy language which suggests that the cost of insurance is based on, *among other factors*, its expectations as to future mortality experience.  To interpret the Flexible Policy as the defendants do would require reading additional words into it"); *Yue*, 2011 WL 210943, at *9  (granting summary judgment in favor of policyholder because "based on" language makes it "impermissible" for insurer to "take[] into account factors other than" those enumerated in policy); *Fairlie v. Transamerica Life Ins. Co*., 2018 WL 3381405, at *4, *6–9 (N.D. Iowa July 11, 2018) (rejecting life insurance company's argument on a motion to dismiss that a provision in the policy stating "[t]he [monthly deduction rate] for a policy month is determined based on our projections of future mortality experience" permits the company to consider non-mortality factors in adjusting the monthly deduction rates).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

10366544v1/016966

they been redetermined based only on EFIE and the actual rates AmGen paid out to policyholders.  *See* Ex. 3 (Expert Declaration of Robert Mills) at ¶ 41.

In short, Plaintiff's case will rise or fall on common proof—that is, on facts common to the members of the proposed Class.  Given the nature of Plaintiff's claim for breach of contract and the evidence adduced to prove it, and because all required elements of Fed. R. Civ. P. 23(a) and (b)(3) are satisfied, the Court should certify the proposed Class.

## II.    SUMMARY OF COMMON EVIDENCE

### A.    The Class Policies Are Standardized, Form Contracts That All Contain the Single-Factor Interest Rate Language.

Plaintiff owns universal life insurance policy number UM0066177L, which was issued by AmGen in California on February 20, 2010 (the "LSIMC Policy"). Ex. 4.  Plaintiff's policy was sold under the marketing name "Elite UL" and is also logged in AmGen's internal documents as ███████████ *See* Ex. 2 (AmGen's Second Supplemental Response to Interrogatory No. 2).  All members of the proposed class are owners of similar, form AmGen universal life insurance policies issued in California ("Class Policies").

These policies all include an insurance component and a savings component. Premiums paid into the savings component are referred to as the policy's "account value" or "accumulation value."  *See* Ex. 4 at LSIMC_000031; Ex. 5 (policy form specimens of Class Policies). Each month, AmGen deducts charges and fees from the policy's accumulation value, and whatever excess amount is left over following the deduction earns interest at rates set by AmGen–what AmGen calls the "credited interest rate" or "credited rate."  *See* Ex. 2 (AmGen's Supplemental Response to Interrogatory No. 10).  ████████████████████

███████████████████████

███████████████████████

10366544v1/016966

1  ██████████████████████████████████████████████████

2  ███████████████████████████████ *See id.*

3      AmGen regularly changes these interest rates. In policyholders' form

4  contracts, AmGen has promised that any changes to interest rates "will be based only

5  on expectations of future investment earnings":

6      **Changes in Rates, Charges and Fees.** This policy does not participate

7      in our profits or surplus. . . . ***Any redetermination of interest rates will be based only on expectations of future investment earnings***. We will

8      not change these rates or charges in order to recoup any prior losses.

9

10  *See* Ex. 4 at LSIMC_000033 (emphasis added); Ex. 5.  This is referred to as

11  "Single-Factor" Interest Rate Language.  This provision stands in stark contrast to

12  the provision of the policy governing other rates charged by AmGen, which

13  enumerates *multiple* factors which those rates can be based upon.   Ex. 4 at

14  LSIMC_000033; Ex. 5. ("Any redetermination of the cost of insurance rates,

15  Premium Expense Charge Percentage or Monthly Administration Fee will be based

16  on our future expectations as to mortality, persistency, expenses, reinsurance costs,

17  and state and federal taxes.")  It also stands in contrast to other "Multi-Factor"

18  policies insured by AmGen, which provide that redeterminations of interest rates will

19  also be based on other factors such as "mortality, persistence, expenses, reinsurance

20  costs, and state and federal taxes."  Ex. 6 at LSIMC_000156.  The policy forms

21  containing the "Single-Factor" Interest Rate Language at issue here are fully

22  integrated contracts, and can only be modified "if such modification is necessary to

23  make any changes as required by the Internal Revenue Code or by any other

24  applicable law, regulation or interpretation in order to continue treatment of this

25  policy as life insurance."  Ex. 4 at LSIMC_000041; Ex. 5.

26

27

28

**B.**     **AmGen's EFIE and Interest Rates are Quantified, Documented,**
**and Verifiable Class-wide.**

AmGen's parent company AIG typically prepares an "███████████
████████████" each quarter, which applies to all Class Policies. *See* Ex. 1,
Harvey Depo. at 63:18–21 ████████████████████████████████
████████████████████████████████ These "Redetermination
Memoranda" contain information such as AmGen's ██████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████. *See* Ex. 2 (AmGen's Supplemental Responses to
Interrogatory Nos. 2–4, 7).  The Redetermination Memoranda are ████████
████████████████████████████████
████████████████. *See* Ex. 1, Harvey Depo. at 100–01.

AmGen quantifies its EFIE in its Redetermination Memoranda in the form of
"benchmark earned rates" that reflect what AmGen expects to earn on its
investments, *i.e.*, its EFIE  *See* Ex. 2 (AmGen's Second Supplemental Response to
Interrogatory Nos. 2 and 3) ("██████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████"); Ex. 1, Harvey Depo. at 113:10–12 (30(b)(6) witness
admitting that █████████████████████████████████████
████████████████████████████████. The Redetermination
Memoranda list, for each Class Policy, ████████████████████████
████████████████████████████████████████
████████████

10366544v1/016966

In the above example ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Ex. 7 at AGL 005714; AGL 005720. AmGen's process for arriving at and documenting its expected or "benchmark" earned rates is the same for all policies in the proposed Class. *See* Ex. 1, Harvey Depo. at 54–55 ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ ; *id*. at 52:15–19 (████████

███████████████████). As the Court already noted, AmGen's "per-investment rates of return are unavailable" to the public, "as they are confidential and proprietary to Defendant." Dkt. 45 at 4 n.3.

AmGen's quarterly Redetermination Memoranda also document the New Money and Portfolio interest rates that it pays.[4] AmGen's process for reviewing and changing rates is uniform across the Class. *See* Ex. 1, Harvey Depo. at 27:5–7 ("Q:

---

[4] *See* Exs. 7, 9–18.

Is the process for reviewing interest crediting rate[s] the same for all in class policies?
A: Yes.").   AmGen likewise does not share this process or memoranda with
policyholders. *See id*. at 82:9–11.  AmGen never discloses the "Portfolio" interest
rate that it credits to policyholders.  *See* Ex 8 (annual statement issued to Plaintiff
disclosing only a "New Premiums" interest rate).

### C.   Common Evidence Shows that Redetermined Interest Rates Are Not "Based Only On" AmGen's EFIE.

Common evidence will show that AmGen does not redetermine interest rates
based only on its EFIE.  The Redetermination Memoranda establish that AmGen
violates the EFIE clause.   For example, AmGen's Q4 2018 Redetermination
Memorandum notes that it had ███████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ *See* Ex. 9 at 3.
Similarly, AmGen's Q2 2013 Redetermination Memorandum ████████ ████ ██
████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████ *See* Ex. 10 at 2.  And
in August 2021 AmGen ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████ *See* Ex. 11 at 3.  There are numerous other examples
from AmGen's documents,[5] all of which show that when AmGen redetermined rates,

---
[5] ████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

10366544v1/016966

1  it retained an excessive and fluctuating spread as additional profit for itself and
2  therefore refused to redetermine interest rates "based only on" EFIE.

3  **D.    Damages Can Be Measured Class-wide and by Policy.**

4  Although not required for class certification, damages can be proven class-
5  wide with common evidence.  AmGen has produced policy level transaction data
6  stating forth with mathematical precision the amounts of interest paid to each class
7  member's policy.  AmGen affirmed that this data "is representative of all policy level
8  information kept on all of Defendant's products that contain the [EFIE] language that
9  is the subject of this litigation." *See* Dkt. 78 at 1.  Using this information, Plaintiff's
10  damages expert Robert Mills has calculated how much interest AmGen should have
11  paid if it had redetermined interest rates based only on its EFIE.  *See* Ex. 3, at ¶ 39.
12  The money owed for each Class Policy can be calculated using a standardized
13  formula of money paid using redetermined interest rates based only on EFIE less the
14  actual money paid using AmGen's historical redetermined interest rates.

15  **III.   ARGUMENT**

16  **A.    Class Action Standard**

17  To be certified, a proposed class must satisfy all of the prerequisites of Rule
18  23(a) and at least one of the three prongs of Rule 23(b).  *See Torres v. Mercer*
19  *Canyons Inc.*, 835 F.3d 1125, 1132 (9th Cir. 2016).  Under Rule 23(a), certification
20  is appropriate if the elements of numerosity, commonality, typicality, and adequacy
21  of representation are satisfied.  Fed. R. Civ. P. 23(a).  Plaintiff seeks certification
22  pursuant to Rule 23(b)(3), which also requires a showing of predominance and
23  superiority.

24

25  _____

11

A court considering class certification "is merely to decide a suitable method of adjudicating the case and should not 'turn class certification into a mini-trial' on the merits.'"   *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)). "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

**B.      The Proposed Class Meets Rule 23(a)'s Requirements**

1.      Numerosity

Rule 23(a)(1)'s numerosity requirement is easily satisfied. "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Estakhrian v. Obenstine*, 320 F.R.D. 63, 79 (C.D. Cal. 2017) (citation omitted). Here, AmGen's policy level data contains at least 8,897 California policies that include the Single-Factor Credited Rate Language. *See* Ex. 3, Mills Decl. at ¶ 10.[6] And while Rule 23 has no separate "ascertainability" requirement, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017), a proposed class is ascertainable if its definition is "based on objective criteria." *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. 2014).   The proposed class here is defined by objective criteria: owners of particular life insurance policies insured by AmGen. Moreover, class members are identifiable from AmGen's records and transaction data. *See* Ex. 3, Mills Decl. at ¶ 11.

---

[6] ██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████   *See* Ex. 3, Mills Decl. at ¶ 10.

2.   Commonality

"Commonality exists when a plaintiff's claims 'depend upon a common contention' of 'a nature that is capable of class-wide resolution,' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in on stroke.'" *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 226 (C.D. Cal. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "For the purposes of Rule 23(a)(2), 'even a single common question' is sufficient." *Id.* (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)).

Common questions of fact and law abound in this case because central issues turn on AmGen's common conduct in breaching materially identical provisions in form insurance policies.  These common questions with common answers include: (1) what are AmGen's EFIEs; (2) what rates did AmGen credit to policyholders; (3) whether Plaintiff or Defendant's interpretation of the single-factor EFIE clause is correct, (4) whether AmGen's interest rate redeterminations are based only on its EFIE or other factors; and (5) whether Plaintiff is entitled to damages and in what amount.

Courts consistently recognize the commonality of such issues in cases alleging breach of standardized contracts. *See, e.g., Transamerica COI*, 2017 WL 6496803, at *6–*7; *Yue*, 282 F.R.D. at 476; *Vogt v. State Farm Life Ins. Co.*, 2018 WL 1955425, at *3 (W.D. Mo. Apr. 24, 2018) *aff'd*, 963 F.3d 753 (8th Cir. 2020) (commonality satisfied where "Plaintiff's claims … all turn on interpretation of the Policy, which is a standard form contract to which each putative class member was a party").[7]

---

[7] *See also Whitman*, 2021 WL 4264271, at *3 n.3 ("State Farm does not contest that Plaintiff satisfies the . . . commonality requirement[] of Rule 23(a) and with good reason. . . . [G]iven that Plaintiff's claims in this action all turn on the interpretation of a standard form contract, commonality is . . . satisfied."); *Bally*, 335 F.R.D. 288, 302 (N.D. Cal. 2020); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *22 (N.D.

13

### 3.   Typicality

"Typicality is satisfied 'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).

Here, AmGen's conduct harmed Plaintiff in the same way as every other class member: by receiving less interest than it was entitled to had rates been redetermined in compliance with the contract. Courts consistently find typicality satisfied in cases that allege the carrier's breach of a rate-setting provision resulted in the alleged injury of lower account values. *See Vogt*, 2018 WL 1955425, at *5. Here, AmGen has admitted that its conduct in reviewing and redetermining rates is uniform as to all Class Policies. *See* Ex. 1, Harvey Depo. at 27:5–7 ("Q: is the process for reviewing interest crediting rates the same for all in-class policies? A: Yes"). Thus, the harm Plaintiff suffered that is attributable to AmGen's uniform conduct—receiving a lower interest rate than it should have—is more than just reasonably coextensive with the harm suffered by all putative class members. *See Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *2 (C.D. Cal. May 24, 2019) ("The test of typicality is whether other

Cal. June 13, 2014) ("[W]hen a form contract is at issue, courts in this district have held that a breach can be determined on a class-wide basis when the harm is the same and the contract terms are the same."); *Gillis v. Respond Power, LLC*, 677 Fed. App'x 752, 756 (3d Cir. 2017) ("Because form contracts should be interpreted uniformly as to all signatories, Pennsylvania and federal courts have recognized that claims involving the interpretation of standard form contracts are particularly well-suited for class treatment."); *USAA COI*, 336 F.R.D. at 551 ("[T]he question of whether Defendant is required by the Class Policies to lower the COI Rates as mortality expectations improve is common to all class members."); *AXA COI*, 2020 WL 4694172, at *6 (finding commonality requirement "easily met" where policies at issue were "form contracts").

members have the same or similar injury . . . and whether other class members have been injured by the same course of conduct" (citation omitted)).

Courts also consistently find typicality satisfied in cases asserting that a common course of conduct breached a form insurance contract.  *See Vogt*, 2018 WL 1955425, at *5 (finding typicality because "Vogt's claims and the claims of the putative class members all arise from and relate to the interpretation and application of the Policy"); *Transamerica COI*, 2017 WL 6496803, at *8 ("These named representatives allege a course of conduct by Transamerica . . . common across the classes.  Therefore, the typicality requirement is met."); *Voya COI*, 330 F.R.D. at 380–81 (finding typicality satisfied where plaintiff alleged breach of same "form contract" as other proposed members of the class); *Conseco COI*, 270 F.R.D. at 531 (finding "no typicality problem" where, as here, claims did not rely on "idiosyncratic oral representations"); *Phoenix COI*, 2013 WL 12224042, at *11 (finding typicality satisfied where plaintiffs "complain of the same unlawful conduct as every other member of the class" and "all members of each class have been damaged by" the same act of the defendant); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 75 (E.D.N.Y. 2004) (finding typicality satisfied where the contracts at issue were "uniform regarding the provisions pertinent to this litigation").

### 4.   Adequacy

Plaintiff and Plaintiff's counsel will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). The adequacy inquiry centers on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Snap*, 334 F.R.D. at 228 (quoting *Ellis*, 657 F.3d at 985).

Plaintiff's interests are aligned with the rest of the proposed class.  Just like every other class member, Plaintiff was under-credited interest on its policy's accumulation value because AmGen failed to redetermine rates based only on EFIE.

15

*See Bally*, 335 F.R.D. at 303 (finding adequacy because "the Policy terms and the methodology used to determine the COI rates that were charged were the same for every Class member, so Bally's interests are substantively identical to the other Class members"); *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 82 (S.D.N.Y. 2018) (explaining that litigating plaintiffs' claims "will equally further all class members' claims because (1) the central issues of liability are commonly shared by all class members and (2) the proof required to show liability is objective and therefore generalizable"). Plaintiff has actively participated in the litigation and understands its obligations as class representative. *See* Ex. 19. (Declaration of Philip Siller).

Finally, Plaintiff's counsel, Susman Godfrey, are experienced attorneys with qualifications and resources to prosecute this action, and has been found adequate class counsel in insurance rate cases such as *AXA COI*, *Voya COI*, *Phoenix COI*, *SLD COI*, and numerous other cases.[8]

## C.   The Proposed Class Satisfies Rule 23(b)(3)

Under Rule 23(b)(3), class certification is appropriate if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Here, both requirements are readily met.

### 1.   Common Issues of Fact and Law Predominate.

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 453 (2016) (citation omitted).  Predominance centers on whether the proposed class is

---

[8] Ex. 20 (Susman Godfrey Firm Resume); *see also AXA COI*, 2020 WL 4694172, at *16 (certifying class and appointing Susman Godfrey as class counsel in insurance rate case); *Voya COI*, 330 F.R.D. at 387 (same); *Phoenix COI*, 2013 WL 12224042, at *12 (same); *SLD COI*, 2021 WL 62339, at *9 (same).

16

"sufficiently cohesive to warrant adjudication by representation," and "measures the relative weight of the common to individualized claims." *Transamerica COI*, 2017 WL 6496803, at *4 (citation omitted). "If 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then adjudication on a representative basis is appropriate." *Negrete v. Allianz Life Ins. Co. of N.A.*, 287 F.R.D. 590, 597 (C.D. Cal. 2012) (citation omitted).

### 2.   Common Questions of Contract Interpretation and Breach Turn on Common Evidence

Plaintiff's sole claim is for breach of contract. The terms of the policies are the same for all class members and common evidence will be used to prove the claim for the entire class. Courts in this district and across the country routinely find that predominance is satisfied where a plaintiff, like here, alleges a uniform course of conduct that breaches standardized provisions in form life insurance contracts. *See, e.g., Transamerica COI*, 2017 WL 6496803, at *13 (predominance satisfied where "Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct"); *Vogt*, 2018 WL 1955425, at *6 ("The terms of the Policy are the same for all class members. . . . Thus, common questions predominate."); *Phoenix COI*, 2013 WL 12224042, at *13 ("There is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that, like here, contain the same or essentially the same terms.") (collecting cases); *see also SLD COI*, 2021 WL 62339, at *9; *AXA COI*, 2020 WL 4694172, at *7; *Voya COI*, 330 F.R.D. at 382–84; *Hancock COI*, 2017 WL 4284163, at *5–7; *Lincoln COI*, 33 N.E.3d at 1171.

Regardless of whatever argument AmGen might make on the merits that it somehow did redetermine its interest rates based only on EFIE, that issue can be resolved with common proof. The Court need not (and cannot) resolve any merits dispute over what the contract means at this stage of the litigation. What currently matters is that the common questions of contract interpretation and breach turn on

common evidence from AmGen's documents and data—namely what AmGen's EFIE were when it redetermined interest rates, and whether those interest rates were based only on its EFIE.  None of this turns on unique circumstances particular to any individual policyholder.

AmGen cannot persuasively argue that standardized contracts all issued in California, and all governed by California law, must somehow be interpreted differently for each class member.  Doing so "runs counter to an axiom of contract law, that when there is a standardized agreement like the form contract at issue . . . the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.'"  *Bally*, 335 F.R.D. at 302 (quoting Restatement (Second) of Contracts § 211(2)).  As Judge Matz explained in *Yue*, under California law, "It is not our role to speculate on the policyholder's abstract expectations, but rather to consider reasonable expectations defined by the insurer's policy language."  282 F.R.D. at 476 (quoting *Haynes v. Farmers Ins. Exchange*, 32 Cal. 4th 1198, 1214 (2004)).  Specifically, interpretation of an insurance contract under California law is to be evaluated by "the *objectively reasonable expectations* of the insured."  *Id.* (quoting *London Mkt. Insurers v. Superior* Court, 146 Cal. App. 4th 648, 656 (Cal. Ct. App. 2007)); *see also Nissel v. Certain Underwriters at Llyod's of London*, 62 Cal. App. 4th 1103, 1111 (Cal. Ct. App. 1998) (same); *Am. Alternative Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (Cal. Ct. App. 2006) ("An ambiguity in an insurance contract must be resolved in a manner consistent with the objectively reasonable expectations of the insured.") (collecting cases).  And even if there were an ambiguity in the standardized policies at issue in this litigation, any ambiguity "is to be resolved against the insurer." *Desai v. Farmers Ins. Exchange*, 47 Cal. App. 4th 1110, 1117 (Cal. Ct. App. 1996) (citation omitted).

Thus, "even assuming that the contractual provision at issue were ambiguous, the subjective expectations of an insured class member would have little if any

18

bearing on the breach of contract analysis." *Yue*, 282 F.R.D. at 476.  As the court explained in *Transamerica COI*, even if class members had different subjective understandings of the relevant contract terms, "statements about unexpressed subjective intent are speculative and are inadmissible in every jurisdiction" to interpret a contract. 2017 WL 6496803, at *12. Courts in other breach-of-form-contract class actions agree.[9]

        3.     Damages Can Be Computed By Applying a Common Method to AmGen's Data.

It is a bedrock legal principle that damages calculations alone cannot defeat certification.  *See, e.g., Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (reiterating that "[i]n this circuit . . . damage calculations alone cannot defeat certification"); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (same); *Loritz v. Exide Techs.*, 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015) ("[I]n the Ninth Circuit, the need to engage in individualized damages calculations alone cannot defeat class certification.").  Nevertheless, here, damages

---

[9] *See, e.g., Hancock COI*, 2017 WL 4284163, at *5 ("Under the terms of the policy, policy terms are not subject to individual negotiation by agents and may not be changed or modified by informal consent or waiver."); *Phoenix COI*, 2013 WL 12224042, at *13 ("How any one individual insured may have interpreted his or her contract is of no moment."); *Red Barn Motors*, 915 F.3d at 1102; *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 441 (1st Cir. 2013) ("Several federal courts have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member.") (collecting cases); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."); *Gillis*, 677 F. App'x at 756 ("[S]tandard form contracts should be interpreted uniformly as to all similarly situated signatories whenever it is reasonable to do so, rendering individual, transaction-specific interpretations inapposite"); *Peoples v. Sebring Capital Corp.*, 2002 WL 406979, at *8 (N.D. Ill. Mar. 15, 2002) (Court "reject[ing] the broader notion that," to interpret a standardized contract, it will "have to examine the parties' intent on a transaction-by-transaction basis").

can be readily measured by applying a common method to AmGen's policy level transaction data.

At the class certification "stage, it is only required that 'plaintiffs be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Milbeck*, 2019 WL 2353010, at *4 (*quoting In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 630 (N.D. Cal. 2018)). Damages here are the difference between the interest that AmGen *should* have paid policyholders had it redetermined rates based only on its EFIE and the interest that AmGen *actually* paid policyholders. Plaintiffs' damages expert Robert Mills has demonstrated how the amount that AmGen under-credited members of the class can be calculated directly from the data that AmGen itself has produced, and determine the resulting underpayment to policyholder accounts. *Cf. Vogt*, 963 F.3d at 770 (affirming jury verdict in COI overcharge class action where damages that "measure the lost account value for all policyholders during the period in which they held the policies" is "the most reasonable basis for measuring the harm that was incurred during the life of the policyholders"); *Bally*, 335 F.R.D. at 300 ("[P]olicies that paid out in full may still have suffered damage to their account values by paying out loaded COI charges in excess of what the Policy authorized."); *Whitman*, 2021 WL 4264271, at *10 (adopting *Vogt* and *Bally*).

As such, calculating damages is no more than "rote arithmetic," *Transamerica COI*, 2017 WL 6496803, at *13, and involves a straightforward comparison of (i) the actual rates that AmGen credited with (ii) the rates AmGen expected to earn from its underlying investments—the latter of which AmGen provides in its Redetermination Memoranda and which it has admitted are its EFIE. Though not required to satisfy Rule 23(b)(3), the fact that "damages can be calculated according to easily applied mathematical methods" further confirms that common issues predominate. *Jensen v. SECORP Indus.*, 2018 WL 5961287, at *4 (C.D. Cal. Aug. 23, 2018).

4.     AmGen's Statute of Limitations Affirmative Defense Does Not Defeat Predominance

AmGen may argue that its statute of limitations affirmative defense creates individualized issues, but "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." *Schramm v. JPMorgan Chase Bank, N.A.,* 2011 WL 5034663, at \*10–\*11 (C.D. Cal. Oct. 19, 2011) (holding that a statute of limitations defense did not necessitate individual inquiries into when class members had actual or inquiry notice of their claims and that defendant's "speculation that some class members' claims may be barred on the basis of actual knowledge is not sufficient to defeat certification"); 2 Newberg on Class Actions § 4:57 (5th ed.) ("Statute of limitations defenses—like damage calculations, affirmative defenses, and counterclaims—rarely defeat class certification.").

As an initial matter, no statute of limitations affirmative defense possibly exists for interest payments made after December 21, 2016, as they fall within California's four-year statute of limitations.  For interest payments made before that date, courts hold that tolling doctrines like the discovery rule do not defeat predominance when, as here, their application depends on common evidence of the defendant's conduct. *See Schramm,* 2011 WL 5034663, at \*11–12 (statute of limitations defense does not defeat predominance because inquiry notice is a "reasonable person test" and no proof of "actual notice" existed which, if it did, would not predominate over common issues).  Plaintiff will demonstrate that the statute of limitation has not run on its claim or those of the Class because no class member had any way of knowing AmGen's internal EFIE, nor how AmGen redetermined interest rates or whether those rates were based only on EFIE.  As this Court already noted, "a policyholder

10366544v1/016966

1  would have 'no way of knowing that he or she was being cheated' because Defendant
2  does not disclose its pricing assumptions."  Dkt. 45 at 5.

3  AmGen has admitted that ██ ████ ██ █████ ██ ████████

4  ████████████████████████████████████████████████████████

5  ██████████████████████████  *See*, Ex. 1, Harvey Depo. at 82:9–11 ("█████

6  ██████████████████████████████████████████████████████████

7  ████████████████.  Indeed, AmGen does not even disclose to policyholders that it

8  pays *two* types of credited interest or that these rates are reviewed quarterly—

9  AmGen's annual statements to policyholders discloses only the New Money rate in

10  effect at the time of the statement, and does not include any information about its

11  Portfolio rate.  *See* Ex. 8. AmGen, in fact, continues to designate its EFIE, and its

12  credited rate redetermination methodology, as "Confidential" under the Protective

13  Order and insists on that information being filed under seal so that the public still

14  cannot have access to it.

15  AmGen acknowledged in its motion to dismiss that any publicly available data

16  was "irrelevant" to determining whether AmGen breached the policies at issue

17  because the information publicly available "says nothing about projected future

18  earnings" on AmGen's investments.  Dkt. 40 at 9.  The Court agreed that AmGen's

19  "[s]pecific, per-investment rates of return are unavailable" because "they are

20  confidential and proprietary to Defendant."  Dkt. 45 at 4 n.3.

21  This same evidence will prove the claims and tolling allegations of the Class

22  as a whole. *See Vogt*, 963 F.3d at 765 (affirming grant of summary judgment for the

23  certified class and against the carrier on its statute of limitations defense because:

24  "Although, with the help of an attorney and an actuarial expert, Vogt was ultimately

25  able to determine that the COI fees included non-enumerated factors, there is no

26  evidence in the record that would have 'place[d] a reasonably prudent person on

27  notice of a potentially actionable injury' simply based on the rising COI fees and

28  annual statements." (citation omitted)); *Bally*, 335 F.R.D. at 304 (statute of

22

limitations defense does not defeat predominance where there is no evidence that policyholders were on notice that carrier "was considering unlisted variables in calculation" of COI rates); *Whitman*, 2021 WL 4264271, at *8–9 (finding that statute of limitations defense did not defeat predominance in insurance rate case).   In *Hancock COI*, the California court certified a class claiming that rates in insurance policies were, like the interest rates here, not set based on the factors enumerated in the contract.   The court rejected an argument that individual tolling issues predominated "[s]ince there is no evidence that defendant discloses, or that class members otherwise have access to, its internal charges or mortality expectations, the limitations period for most class members would be tolled in the absence of evidence that the policy holder was aware of his or her claim." *Hancock COI*, 2017 WL 4284163, at *7.  The same is true here, and common issues therefore predominate.[10]

### 5.   Class Adjudication is Superior

Courts consistently find class actions to be the superior vehicle for adjudicating whether insurers have breached the uniform provisions of its form life insurance policies.  *See, e.g., Bally*, 335 F.R.D. at 305; *Voya COI*, 2019 WL 1167752, at *7; *Vogt*, 2018 WL 1955425, at *7; *Transamerica COI*, 2017 WL 6496803, at *14–15; *Hancock COI*, 2017 WL 4284163, at *2; *Phoenix COI*, 2013 WL 12224042, at *16–18.  The same analysis applies here.

***First***, given the vast expenditure of time and money required to litigate this case, it would make little economic sense for class members to seek their own legal redress for AmGen's actions. That damages for the LSIMC Policy are only ▮▮▮▮▮ before prejudgment interest demonstrates the impracticality of litigating these claims

---

[10] *See also Conseco COI*, 270 F.R.D. 521, 530 n.8 (N.D. Cal. 2010) ("[I]ndividual issues relating to the statute of limitations do not bar certification where there is otherwise a sufficient showing of commonality."); *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) ("[E]ven if there exists questions of individual compliance with the Oregon statute of limitations, they are not sufficient, on balance, to negate the predominance of the common issues.").

10366544v1/016966

on an individual basis.  *See* Mills Decl.  at ¶39.  ***Second***, Plaintiff is not aware of any individual action currently challenging AmGen's under-crediting of interest to its policyholders.  Nor is Plaintiff aware of any putative class member who has indicated any interest in individually managing their own litigation.  *See Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 625 (C.D. Cal. 2015) (superiority satisfied when there were "only two individuals—out [of] thousands of putative class members" decided to initiate their own litigations).  ***Third***, a central forum is preferable for this litigation given the uniformity of the legal and factual issues across all claims as it "ensure[s] judicial economy and [] guard[s] against the risk of inconsistent results."  *De Stefan v. Frito-Lay, Inc.*, 2011 WL 13176229, at * 8 (C.D. Cal. June 6, 2011).  Management of this case as a class action will be straightforward and efficient, whereas the alternative of individual claims would be wasteful and pointlessly duplicative.  ***Fourth***, as explained above, every critical issue in this case will be resolved by common evidence.  Any individual action will involve questions of law and fact identical to the ones Plaintiff raise in this litigation, and will require identical evidence to demonstrate AmGen's breach. "'Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation,' and is certainly superior 'if no realistic alternative exists.'" *Milbeck*, 2019 WL 253010, at *5 (citation omitted).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for class certification of its breach-of-contract claim and appoint the Plaintiff as the Class Representative and Susman Godfrey L.L.P. as Class Counsel.

Dated:  February 10, 2022                    Respectfully submitted,


By: */s/ Steven G.Sklaver*
Steven G. Sklaver
Glenn C. Bridgman

Lear Jiang
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel:    310-789-3100
Fax:   310-789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
ljiang@susmangodfrey.com

Seth Ard (*pro hac vice*)
Ryan C. Kirkpatrick
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.:  212-336-8330
Fax:   212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

Attorneys for LSIMC, LLC

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR CLASS CERTIFICATION

10366544v1/016966